**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROMAINE J. HOWELL,                         )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )          02:03cv0292
                                           )
RINGGOLD AREA SCHOOL DISTRICT,             )
                                           )
                    Defendant.             )

**MEMORANDUM OPINION AND ORDER OF COURT**

August 8, 2005

      Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support, filed by Defendant, Ringgold Area School District,

(*Document Nos. 19 and 20,* respectively), and Plaintiff's brief in opposition (*Document No. 26*).

After careful consideration of Defendant's motion, the filings in support and opposition thereto,

the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds

that there is not sufficient record evidence upon which a reasonable jury could return a verdict

for Plaintiff, Romaine J. Howell, on his claims of discrimination due to his race and age.

Therefore, the Court will grant the motion for summary judgment of Defendant, Ringgold Area

School District.

**PROCEDURAL BACKGROUND**

      Plaintiff filed this civil rights action on February 27, 2002, in which he alleges that

Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title

VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.,* ("ADEA")

and the Pennsylvania Human Relations Act, 42 P.S. § 951, *et seq.* ("PHRA"). Specifically,

Plaintiff alleges that (i) he was interviewed on August 2, 2001, by Ringgold Area School

District ("Ringgold") for the position of varsity baseball head coach; (ii) on August 15, 2001, Plaintiff was not hired and a white male, under age forty, was hired for the position; and (iii) because of Plaintiff's experience in sports, it can only be concluded that the race and age of Plaintiff were determining factors in the Defendant's reason not to hire him as Varsity Head Coach of the Baseball Team.

Defendant has filed the instant motion for summary judgment, in which it contends that Plaintiff is unable to establish a *prima facie* case on either his Title VII and/or ADEA claim. Additionally, Defendant argues that Plaintiff's discrimination claims brought under the PHRA are time barred. Plaintiff has filed his answer and brief in opposition to the motion for summary judgment. Plaintiff concedes that his claims are time barred under the PHRA; therefore, the Court will address only Plaintiff's federal claims brought under Title VII and the ADEA.

BACKGROUND

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows. Plaintiff has been employed as a teacher at Ringgold Area School District ("Ringgold") since 1992.

At the conclusion of the high school baseball season in the spring of 2001, the position of Head Varsity Baseball Coach for Ringgold School District, for the school year 2001-2002 opened up. The position was posted and advertised in the Washington Observer-Reporter, the Pittsburgh Post-Gazette, the Valley Independent, and the Tribune Review.

Eight individuals, including Plaintiff, applied for the Head Varsity Baseball Coach position: Romaine J. Howell, Jay Wollenburg, Robert LeRoch, Bill Callaway, Stephen Reufle,

2

Scott Henson, Edward Pupich, and Dan Palm.  Of the eight candidates, Plaintiff was the only African-American and the only person over 40 years of age.

Interviews were scheduled and conducted with the applicants on August 2, 2001, by an Interview Team, which was comprised of the Athletic Director Jason Ross; the High School Principal Shirley Culyba; Denise Kuhn, a member of the Athletic Committee of the Board of School Directors; and Loyal Dean, a teacher in the School District.  With the exception of Stephen Reufle, who withdrew his application prior to the interviews, each of the applicants was interviewed and asked the same series of questions, which had been prepared by the Athletic Director.

The Interview Team learned prior to the date of Plaintiff's interview that he had recently been hired as the Head Varsity Football Coach at California Area School District, a neighboring school district.  The seasons for high school football and baseball do not overlap, however, members of the Interview Team were concerned with Plaintiff's ability to serve as the Head Varsity Football Coach and the Head Varsity Baseball Coach, at two different school districts, during the same school year.   Plaintiff had never served as a Head Varsity Football Coach previously, nor had he ever served as a Head Coach in any sport within Ringgold.

Therefore, in addition to the "standard" questions asked of all applicants, during his interview, the Interview Team asked Plaintiff how he would manage holding two Varsity Head Coaching positions in two different school districts.  Plaintiff responded that there were other individuals employed by the California Area School District who would handle the off-season conditioning and weight program for the Varsity football team.

Members of the Interview Team testified during their depositions that this response was not satisfactory as the response indicated to them a lack of commitment on Plaintiff's part to the California Area School District program. *See* Ross Depo. at 20; Kuhn Depo. at 19-20.

Following the interviews, Robert LeRoch and Dan Palm were eliminated from consideration. The remaining candidates were ranked by the Interview Team, in order to make a recommendation to the Board.   The candidates were ranked on their Varsity coaching experience in general, and on their coaching experience, if any, at Ringgold.  According to Jason Ross, the Athletic Director, the Interview Team was seeking a candidate who could work best with the high school students and be a role model for the students and his assistants, who had prior experience as a Head Varsity Coach, who was organized, and who was the team's leader, and could recruit and retain qualified assistants. (Ross Depo. at 25-26.)

After the interviews, the Interview Team ranked the candidates as follows:  Scott Henson and Jay Wollenburg were tied for first; Bill Callaway was ranked second, Edward Pupich was ranked third, and Plaintiff was ranked fourth.  (Ross Depo. at 26-27, 61; *see also* Exhibit 6, Def's App.)

The practice of the School District at the time was that the three highest ranked candidates were to be presented to the full Board of Directors for a second interview.  Thus, Scott Henson, Jay Wollenburg and Bill Callaway were scheduled for second interviews with the full Board.  However, the day he was scheduled for a second interview, Jay Wollenburg withdrew his application from consideration.

Scott Henson and Bill Callaway were then interviewed by the full Board of Directors.  At the August 15, 2001, Board of Directors meeting, the Board members voted to offer Bill Callaway the position of  Head Varsity Baseball Coach.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury."  *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

As stated above, Plaintiff claims that he was denied the position of Head Varsity Baseball Coach because of his race, in violation of Title VII, and age, in violation of the ADEA  Defendant responds that its decision not to hire Plaintiff was based on legitimate, nondiscriminatory reasons.  The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 526-27 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

A.        *Title VII*

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1).  Thus, a court's ultimate task in a race discrimination case is to determine whether the plaintiff has carried his burden of showing, by a preponderance of the evidence, that the employer intentionally discriminated against him.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993); *see Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179 (3d Cir.1985) ("[A] plaintiff must show that his status as a minority class was the but for reason for the treatment accorded."), *cert. denied*, 475 U.S. 1035 (1986).

In a Title VII lawsuit, the familiar *McDonnell Douglas* formulation[1] regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment.   Accordingly, the plaintiff bears the initial burden of presenting a *prima facie* case by demonstrating that (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment decision; and (4) others not in the protected class were treated more favorably. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994) (*citing McDonnell Douglas*, 411 U.S. at 802).  Should the plaintiff make this showing, a presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision.  *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc*., 896 F.2d 793, 797 (3d Cir.1990).

---

[1]        *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose. *Fuentes*, 32 F.3d at 763. If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory purpose was a determinative factor in the decision. *Id*. at 764; *Bellissimo*, 764 F.2d at 179-80. The plaintiff can either prove this directly, by showing that discriminatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey*, 996 F.2d at 638; *Weldon*, 896 F.2d at 797.

At trial, a Title VII plaintiff must prove both that the employer's reason was false and that discrimination was the real reason for the discharge. *Fuentes*, 32 F.3d at 763. However, the Court of Appeals for the Third Circuit has held that the plaintiff's burden is not as onerous when attempting to survive a summary judgment motion. In such situations, the plaintiff need only demonstrate that there are disputed factual issues concerning either (1) whether the proffered reason for the discharge is false, or (2) whether an invidious discriminatory reason was more likely than not a motivating or determinative cause for the discharge. *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir.1994); *Fuentes*, 32 F.3d at 764.

For purposes of this decision, the Court will assume that Plaintiff has met his *prima facie* case. Therefore, the burden shifts to Defendant Ringgold to articulate some legitimate, nondiscriminatory reason for its decision. Defendant argues that legitimate reasons exist for its decision to hire Bill Callaway rather than Plaintiff for the Head Varsity Baseball Coach position. Namely, that despite Plaintiff's assurances, members of the Interview Team had

serious concerns about Plaintiff's ability to fully commit to two Varsity programs at two different school districts during the same school year.

Because Defendant has articulated a legitimate, non-discriminatory reason for its failure to award Plaintiff the coaching position, the onus shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendant's stated explanation is pretextual.  *Fuentes*, 32 F.3d at 763.

Plaintiff responds that  "when comparing the experience and qualifications of Mr. Howell to the remainder of the applicants, Mr. Howell was far superior." Pl's Br. at 8.  Plaintiff argues that "it is clear from the facts . . . that is, season length, coaching history, places of teaching, etc., that the Plaintiff has more than enough evidence to demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, and contradictions where a reasonable factfinder could rationally find the Defendant's reasons for its actions unworthy of credence." Pl's Br. at 10.

However, the Court finds and rules that the summary judgment record is utterly devoid of any evidence which demonstrates that Plaintiff's race was a factor in the Board's decision not to offer him the coaching position; rather Plaintiff relies upon his own "unsupported assertions, conclusory allegations, or mere suspicions."  For example, when Plaintiff was asked during his deposition why he thought he was not given the Head Baseball Varsity Coach position, he replied:

> A:  My opinion?  Because there's never been a black head coach here in Ringgold whatsoever, and the population that we here (sic) is - - you know, pretty well we have a good population with minorities, and it seemed like they never wanted to do anything to accommodate - -
>
> Q:  In any sport, you're saying, there's never been a head - -

> A:  Well, they'll hire one at the lower level, you know, but never a head
> coach.  We had one which was interim basketball, girls basketball.  When
> the job came open, he didn't get it, and he took them to the play-offs and
> everything.  It's typical of Ringgold.

Pl's Depo. at 63-64.

The Court finds and rules that Plaintiff has simply failed to present any evidence to show that race was a factor in Ringgold's decision not to hire him as Head Varsity Baseball Coach, or that he was not hired for reasons other than those articulated by Ringgold. Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's Title VII claim.

B.      *The Age Discrimination and Employment Act of 1967*

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The protection against age discrimination in the ADEA is "limited to individuals who are at least 40 years of age." *Id.* § 631(a).

To survive a motion for summary judgment in an ADEA case, a plaintiff must first establish a *prima facie* case of age discrimination.  *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc).  The elements of a *prima facie* case of age discrimination are: (1) the plaintiff is over 40 years of age; (2) the plaintiff is qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the plaintiff was replaced by (or the company retained) a sufficiently younger person to create an inference of job discrimination. *Anderson v. Conrail,* 297 F.3d 242, 249 (3d Cir. 2002).

9

The evidentiary framework set forth in *McDonnell Douglas* is also applicable to the ADEA context. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

Similar to his Title VII claim, the Court finds that Plaintiff has simply failed to present any evidence to show that age was a factor in Ringgold's decision not to hire him as Head Varsity Baseball Coach, or that he was not hired for reasons other than those articulated by Ringgold.  Accordingly, the Court will grant the summary judgment motion filed by Defendant on Plaintiff's ADEA claim.

### CONCLUSION

For the reasons discussed supra, the Court finds that Plaintiff has not shown by any evidence that Defendant intentionally discriminated against him because of his race and/or age. Therefore, the Motion for Summary Judgment filed by Defendant will be granted in its entirety. An appropriate Order follows.

McVerry, J.

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROMAINE J. HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:03cv0292 |
| | ) | |
| RINGGOLD AREA SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 8th day of August, 2005, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the

Motion for Summary Judgment filed by Defendant Ringgold Area School District (*Document*

*No. 19*) is **GRANTED** and judgment is hereby entered in favor of Defendant, Ringgold Area

School District.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:      Jack A. Carson, Esquire
         515 Fallowfield Avenue
         Suite 100
         Charleroi, PA 15022

         Susan T. Roberts, Esquire
         Frank G. Adams, Esquire
         Email: fadams@peacockkeller.com
         Peacock, Keller & Ecker
         70 East Beau Street
         Washington, PA 15301